## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORY J. KNOX through**<br>**ARIEL S. PERKINS** | **CIVIL ACTION** |
| | **NO. 22-1674** |
| **VERSUS** | |
| | **SECTION: "G"(5)** |
| **NISSAN NORTH AMERICA** | |

## ORDER AND REASONS

Before the Court is Defendant Nissan North America, Inc.'s ("Defendant") "Rule 12(b)(6) Motion to Dismiss."[1] Plaintiff Cory J. Knox ("Knox"), appearing through his wife Ariel S. Perkins ("Perkins" or "Plaintiff"), opposes the motion.[2] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part, denies it in part, and grants Plaintiff leave to file an amended complaint.

## I. Background

On April 20, 2021, Knox purchased Perkins a brand-new Nissan Armada Platinum from Hall Automotive in Chesapeake, Virginia.[3] Plaintiff alleges that she almost immediately noticed electrical issues with the vehicle.[4] Specifically, Plaintiff alleges that the Bluetooth connection was inoperable, the collision warning signal would ignite despite there being no other vehicles in the vicinity, the seatbelt warning signal would ignite when all passengers were safely belted, and the

---

[1] Rec. Doc. 6.

[2] Rec. Doc. 7.

[3] Rec. Doc. 1-2 at 2.

[4] *Id.*

low oil warning signal would ignite despite recent service of the vehicle.[5] Plaintiff alleges that she took the vehicle to Hall Automotive on July 9, 2021, and replacement parts were ordered for the vehicle.[6] However, Plaintiff alleges that Knox received a permanent change of station to Louisiana before the replacement parts were received, and Plaintiff had to drive the vehicle from Louisiana to Virginia without benefit of the repair.[7] During the drive, Plaintiff alleges that the vehicle collision prevention mechanism would trigger, despite there being no impending collision, causing sudden and automatic braking.[8]

After arriving in Louisiana, Plaintiff alleges that she took the vehicle to Ray Brandt Nissan in Marrero, Louisiana.[9] Plaintiff alleges that Ray Brandt Nissan made several repairs to the vehicle on December 20, 2021, January 12, 2022, and March 9, 2022, including replacing the lane camera, updating the AV over the air radio, replacing the battery, clearing diagnostic codes, and replacing the USB port assembly.[10] On April 14, 2022, Plaintiff alleges that she brought the vehicle to Bayou Nissan for additional repairs, where the vehicle remained through the date of the filing of the petition.[11] Plaintiff alleges that the service managers at Ray Brandt Nissan and Bayou Nissan both acknowledged that there were electrical issues with the Armada Platinum line of vehicles.[12]

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 2–3.

[9] *Id.* at 3.

[10] *Id.* at 3–4.

[11] *Id.* at 4.

[12] *Id.*

On April 19, 2022, Plaintiff filed a Petition for Damages against Defendant in the 24th Judicial District Court for the Parish of Jefferson.[13] Plaintiff alleges that Knox is currently deployed, and she brings this case on his behalf pursuant to a military power of attorney.[14] Plaintiff brings claims for breach of express warranty, unfair trade practices, redhibition, and breach of contract.[15] On June 8, 2022, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[16]

On July 15, 2022, Defendant filed the instant "Rule 12(b)(6) Motion to Dismiss."[17] On August 2, 2022, Plaintiff opposed the motion.[18] On August 15, 2022, Defendant filed a reply brief in further support of the motion.[19]

## II. Parties' Arguments

### A. Defendant's Argument in Support of the Motion to Dismiss

Defendant moves the Court to dismiss the claims brought under the Louisiana Lemon Law, Louisiana redhibition law, and the Louisiana Unfair Trade Practices Act ("LUTPA").[20] First, Defendant argues that Plaintiff cannot state a claim under the Louisiana Lemon Law because the vehicle is not covered under the statutory definition of a motor vehicle.[21] Specifically, Defendant

---

[13] *Id.* at 1.

[14] *Id.*

[15] *Id.*

[16] Rec. Doc. 1.

[17] Rec. Doc. 6.

[18] Rec. Doc. 7.

[19] Rec. Doc. 11.

[20] Rec. Doc. 6. Defendant does not make an argument for dismissal of the breach of contract claim.

[21] Rec. Doc. 6-1 at 3.

points out that the law defines a motor vehicle as a vehicle "sold in this state on or after September 1, 1984."[22] Since the vehicle was purchased in Virginia, Defendant asserts that she cannot state a claim under the Louisiana Lemon Law.[23] Similarly, Defendant contends that Plaintiff cannot bring a claim under Louisiana redhibition law since the sale giving rise to the suit occurred in Virginia.[24]

Finally, Defendant asserts that Plaintiff failed to state a claim under LUTPA.[25] Defendant argues that Plaintiff conflates the breach of contract claims with violations of LUTPA.[26] Defendant asserts that Plaintiff offers no fact in support of the legal conclusion that Defendant engaged in "unfair and deceptive practices."[27] Therefore, Defendant avers that Plaintiff has failed to allege facts to support a LUTPA claim with sufficient particularity.[28]

## B. *Plaintiff' Argument in Opposition to the Motion to Dismiss*

Plaintiff concedes that the vehicle was purchased in Virginia, but she argues that the car was moved to and registered in Louisiana due to Knox's active-duty military status.[29] Plaintiff asserts that "there is not a single case whereby a Louisiana resident's cause of action under the Louisiana Lemon Law was dismissed due to the purchase being made out of state."[30] Plaintiff explains that several states apply the lemon law of the state where the vehicle is registered.[31]

---

[22] *Id.* (quoting La. Rev. Stat. § 51:1941(6)).

[23] *Id.* at 4.

[24] *Id.* at 4–5.

[25] *Id.* at 6–7.

[26] *Id.* at 7.

[27] *Id.*

[28] *Id.*

[29] Rec. Doc. 7 at 5.

[30] *Id.* at 6.

[31] *Id.*

Plaintiff argues that Virginia could take the view that its law should not apply because the vehicle is registered in Louisiana.[32] Considering that the vehicle is registered in Louisiana, Plaintiff argues that Louisiana's Lemon Law should apply to this case.[33]

Plaintiff cites the Servicemembers Civil Relief Act, 50 U.S.C. § 521, ("SCRA") which was designed "to suspend enforcement of civil liabilities of persons in military services of the United States in order to enable such persons to devote their entire energy to the defense of the Nation."[34] Plaintiff suggests that the SCRA should be "liberally construed" and applied in a "broad spirit of gratitude towards service of personnel."[35] Plaintiff asserts that to dismiss the claims "for the simple reason that the United States Army determined that Knox should be relocated to Louisiana, is hardly an expression of gratitude for Knox's continued service to this country."[36]

## C.     Defendant's Arguments in Further Support of the Motion to Dismiss

In reply, Defendant points out that the opposition did not address the redhibition and LUTPA claims.[37] Next, Defendant argues that Plaintiff has failed to show that the vehicle is covered by Louisiana Lemon Law.[38] To the extent that Plaintiff argues that there is no jurisprudence holding that a plaintiff cannot maintain an action under Louisiana Lemon Law for a vehicle purchased out of state, Defendant points out that the primary source of law in Louisiana is

---

[32] *Id.* at 8.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 9.

[36] *Id.* at 10. Alternatively, if the Court determines that Louisiana law should not apply to this case, Plaintiff asserts that the case should be transferred to the Eastern District of Virginia. *Id.*

[37] Rec. Doc. 11 at 1.

[38] *Id.* at 2.

legislation.[39] Defendant asserts that the statute's definition of a motor vehicle is clear and unambiguous.[40] Finally, Defendant asserts that SRCA is not applicable to the issue presented since Defendant is not seeking dismissal due to the fact that Plaintiff was relocated to Louisiana by the U.S. military, rather dismissal is sought because the Louisiana Lemon Law does not apply to this vehicle.[41]

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[42] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[43] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[44] "Factual allegations must be enough to raise a right to relief above the speculative level."[45] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[46]

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at 4–5.

[42] Fed. R. Civ. P. 12(b)(6).

[43] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[45] *Twombly*, 550 U.S. at 555.

[46] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[47] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[48] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[49] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[50] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[51] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[52] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[53] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[54]

---

[47] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[48] *Iqbal*, 556 U.S. at 678–79.

[49] *Id.* at 679.

[50] *Id.* at 678.

[51] *Id.*

[52] *Id.*

[53] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[54] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

## IV. Analysis

Defendant moves the Court to dismiss the claims brought under the Louisiana Lemon Law, Louisiana redhibition law, and LUTPA.[55] Each of these arguments is addressed in turn.

### A.      The Louisiana Lemon Law

The Louisiana Lemon Law, Louisiana Revised Statute § 51:1941 *et seq*., "sets forth a manufacturer's duties with regard to any new motor vehicle, which does not conform to an applicable express warranty, to repair the motor vehicle [], to replace the motor vehicle with a comparable new motor vehicle [], or to accept return of the motor vehicle and refund the full purchase price."[56] Section 51:1941(6) defines a "motor vehicle" as "a passenger motor vehicle or a passenger and commercial motor vehicle . . . sold in this state on or after September 1, 1984."[57]

The subject vehicle was not sold in this state, and as such, it does not fall within the scope of the law. Plaintiff concedes that the vehicle was purchased in Virginia, but she asserts that "there is not a single case whereby a Louisiana resident's cause of action under the Louisiana Lemon Law was dismissed due to the purchase being made out of state."[58] Nevertheless, the statute is clear and unambiguous. It applies to motor vehicles sold in this state on or after September 1, 1984. It is undisputed that the vehicle was not sold in Louisiana. Accordingly, Plaintiff has failed to state claim against Defendant under the Louisiana Lemon Law.

Plaintiff suggests that the SCRA should be "liberally construed" and applied in a "broad spirit of gratitude towards service of personnel."[59] Plaintiff asserts that to dismiss the claims "for

---

[55] Rec. Doc. 6. Defendant does not make an argument for dismissal of the breach of contract claim.

[56] *Ford Motor Credit Co. v. Bower*, 589 So. 2d 571, 574 (La. App. 1 Cir. 1991).

[57] La. Rev. Stat. § 51:1941(6).

[58] Rec. Doc. 7 at 6.

[59] *Id.* at 9.

the simple reason that the United States Army determined that Knox should be relocated to Louisiana, is hardly an expression of gratitude for Knox's continued service to this country."[60]

The purpose of the SCRA is to "suspend enforcement of civil liabilities of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation."[61] "Although the act is to be liberally construed it is not to be used as a sword against persons with legitimate claims."[62] Generally, the SCRA does not provide relief to a servicemember unless he or she can demonstrate that their military service has materially affected his or her ability to meet a certain legal obligation.[63] Plaintiff has not demonstrated that the SCRA has any effect on this case. Defendant is not seeking dismissal of Plaintiff's Lemon Law claim due to Knox's relocation to Louisiana by the military. Instead, Defendant argues that the Louisiana Lemon Law does not apply to the sale of Plaintiff's vehicle because it was not sold in Louisiana, a basic element of the cause of action. Plaintiff has failed to state a claim under the Louisiana Lemon Law "that is plausible on its face."[64] Considering Plaintiff has cited no authority pursuant to which the Court could apply the Louisiana Lemon Law to this case, and there are apparently no facts that can be asserted to support the claim, it is hereby dismissed.

---

[60] *Id.* at 10.

[61] *See Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing SCRA's predecessor the Soldiers' and Sailors' Civil Relief Act). *See also* 50 U.S.C. § 3902 ("The purposes of this chapter are-- (1) to provide for, strengthen, and expedite the national defense through protection extended by this chapter to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and (2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.").

[62] *Engstrom*, 47 F.3d at 1462.

[63] *See Boone v. Lightner*, 319 U.S. 561, 569 n.2 (1943) ("This mere fact of being in military service is not enough; military service must be the reason for the defendant not meeting his obligations.").

[64] *Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d at 1050. The Court notes that Defendant only seeks dismissal of Plaintiff's claim under the Louisiana Lemon Law, and this Order does not address the validity of any potential claim under any other state's lemon law.

**B.      *Redhibition***

Under Louisiana law, a seller warrants the buyer against redhibitory defects or vices in the thing sold.[65] Louisiana Civil Code article 2520 provides:

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.[66]

The redhibitory action is unique to Louisiana law, and it has its roots in Roman law.[67] Its purpose is "to protect buyers from latent defects undisclosed by corrupt dealers."[68] "The seller in good faith had only to restore the purchase price paid and any expenses incurred (Article 2509, La. Civil Code of 1825), while the seller in bad faith was also liable in damages. (Article 2523, La. Civil Code of 1825)."[69]

Defendant argues that Louisiana redhibition law does not apply because the vehicle was not sold in Louisiana.[70] Unlike the Louisiana Lemon Law, the redhibition code article does not explicitly state that it only applies to sales conducted in Louisiana. Nevertheless, the Louisiana Civil Code articles that govern redhibition are found under the title of "Sales and Conventional

---

[65] La. Civ. Code art. 2520; Floyd W. Lewis, Comment, *Warranty Quality in Louisiana: Extent of Recovery Under the Implied-in-Law Warranty*, 23 Tul. L. Rev. 130, 131 (1948).

[66] La. Civ. Code art. 2520.

[67] *Aucoin v. S. Quality Homes, LLC*, 2007-1014 (La. 2/26/08), 984 So. 2d 685, 692.

[68] *Id.*

[69] *Id.* (internal citation omitted).

[70] Rec. Doc. 6-1 at 4.

Obligations." Redhibition actions sound in contract, not tort.[71] Louisiana courts have observed that redhibition claims apply to "[e]very sale in this state."[72]

In *Lentz v. Applegate*, the Louisiana First Circuit Court of Appeal allowed a Louisiana plaintiff to maintain a redhibition claim against an out-of-state seller who advertised in the State and shipped machinery to the plaintiff in Louisiana.[73] However, unlike in *Lentz*, it is unclear what connections the vehicle has to Louisiana beyond its registration. In opposition, Plaintiff did not respond to Defendant's arguments regarding redhibition. Accordingly, Plaintiff has failed to state claim against Defendant under the Louisiana redhibition law.[74] The Court thereby assumes granting Plaintiff leave to amend would be futile.

## C.   *The Louisiana Unfair Trade Practices Act*

LUTPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[75] Louisiana Revised Statute § 51:1409 provides, in pertinent part, that "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice . . . may bring an action individually . . . to recover actual damages."[76] The Louisiana Supreme Court has stated that the goals of LUTPA include "halting unfair business practices and sanctioning the businesses which commit them, preserving

---

[71] *Touro Infirmary v. Sizeler Architects*, 2004-0634 (La. App. 4 Cir. 3/23/05), 900 So. 2d 200, 204.

[72] *Johnson v. CHL Enterprises,* 115 F. Supp. 2d 723, 728 (W.D. La. 2000); *Womack v. Lafayette Furniture Co.*, 50 So. 2d 843, 845 (La. Ct. App. 1951) ("There exists in every sale consummated under the laws of this State, the seller's warranty against hidden defects in connection with the article or merchandise sold, or its redhibitory vices.")

[73] *Lentz v. Applegate*, 98-1442 (La. App. 1 Cir. 6/25/99); 739 So. 2d 327.

[74] For the reasons discussed above, the SCRA does not affect this analysis.

[75] La. Rev. Stat. § 51:1405(A).

[76] La. Rev. Stat. § 51:1409(A).

and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry."[77] Courts determine what constitutes "unfair" and "deceptive" conduct on a case-by-case basis.[78] Louisiana courts have stated that a practice is unfair "when the practice is unethical, oppressive, unscrupulous, or substantially injurious."[79] Likewise, Louisiana courts have described a trade practice as deceptive when it amounts to "fraud, deceit or misrepresentation."[80] Ultimately, however, "the range of prohibited practices under LUTPA is extremely narrow."[81] "LUTPA does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes."[82]

Here, Plaintiff does not allege any facts in support of the LUTPA claim. Plaintiff offers only one conclusory allegation that Defendant engaged in "unfair and deceptive practices."[83] Plaintiff has failed to allege the LUTPA claim with sufficient particularity. Thus, Plaintiff has failed to state a claim against Defendant under LUTPA.

---

[77] *Quality Env't Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1025.

[78] *Id.*

[79] *See Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 720–21 (E.D. La. 2009) (Vance, J.) (quoting *Jefferson v. Chevron U.S.A. Inc.,* 713 So. 2d 785, 792 (La. App. 4 Cir. 1998)).

[80] *Id.* at 721 (quoting *Jefferson,* 713 So. 2d at 793) (emphasis added); *see also Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 404 (5th Cir. 2000) ("To recover under LUTPA, a plaintiff must prove fraud, misrepresentation, or other unethical conduct.").

[81] *Quality Env't. Processes, Inc.*, 144 So. 3d at 1025.

[82] *Volentine v. Raeford Farms of Louisiana, LLC*, 50,698 (La. App. 2 Cir. 8/15/16), 201 So. 3d 325, 353 (citing *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09–1633 (La. 4/23/10), 35 So.3d 1053).

[83] Rec. Doc. 1-1 at 5.

## V. Conclusion

For the reasons discussed above, the Court finds that Plaintiff fails to state a claim upon which relief can be granted under the Louisiana Lemon Law, Louisiana redhibition law, or LUTPA. Nevertheless, Defendant's motion is limited to the application of Louisiana law, and Plaintiff has not had an opportunity to raise a claim under Virginia law, where the sale of the vehicle occurred. Additionally, the Court recognizes that a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[84] Short of granting a motion to dismiss, a court may grant Plaintiff leave to amend the complaint.[85] Therefore, the Court grants the motion regarding the Louisiana Lemon Law and redhibition claims and denies the motion as it relates to the LUTPA claims. The Court also hereby grants Plaintiff leave to file an Amended Complaint to cure the deficiencies associated with the remaining LUTPA claim, if possible.[86]

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Rule 12(b)(6) Motion to Dismiss"[87] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an Amended Complaint within fourteen days of this Order to cure the deficiencies in its LUTPA claim, if possible, and to assert any other applicable claim. If Plaintiff fails to amend the Complaint, or if

---

[84] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[85] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[86] Plaintiff raises an argument regarding transfer of jurisdiction to the Eastern District of Louisiana. However, Defendant did not request transfer in the motion. If either party believes the case should be transferred, an appropriate motion should be filed.

[87] Rec. Doc. 6.

Plaintiff amends the Complaint and the amendments do not cure the deficiencies identified in this

Order, Defendant is granted leave to file responsive motions if necessary.

      **NEW ORLEANS, LOUISIANA**, this  _11th_ day of October, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**